UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**TRACY LIN MORIN,**

Debtor.

Case No. **16-60426-7**

*MEMORANDUM OF DECISION*

At Butte in said District this 16th day of March, 2017.

Pending in this Chapter 7 case is the Trustee's Motion for Order Approving Settlement between the Chapter 7 Trustee and Richard Buley, Esq., Tipp & Buley, P.C., and Tipp, Coburn & Schandelson, P.C., (the "Settlement Motion") (Dkt. 77). The singular objection opposing approval of the Settlement Motion was filed by Debtor Tracey Lin Morin (the "Objection") (Dkt. 79). The grounds for the objection were that the Trustee (i) substantially under-valued the work and expense incurred by the Debtor in prosecuting the underlying case and over-valued the contribution by Tipp & Buley and Tipp Coburn & Schandelson[1]; (ii) that the Trustee did not consider the Debtor's views in negotiating the settlement; and, (iii) finally, the objection noted that subject to the outcome of a pending adversary proceeding, the estate may be solvent, and thus, Debtor has an interest in the outcome of the Motion.

A hearing on approval of the Settlement Motion and the Objection was held in Missoula on March 9, 2017. Witnesses Richard Buley ("Buley"), the Trustee Richard J. Samson

---

[1] Debtor is an attorney whose license was placed on Disability Inactive Status on May 29, 2013. Tipp & Buley, P.C., and Tipp, Coburn & Schandelson, P.C., (collectively, Tipp & Buley, P.C., and Tipp, Coburn & Schandelson, P.C. are referred to herein as the "Law Firms"). The Law Firms became involved in the underlying case as co-counsel with Debtor in January 2013, approximately 4 months prior to Debtor's license being placed on Disability Inactive Status.

("Trustee"), and Morin testified at the hearing. Morin was represented by attorney Edward A. Murphy of Missoula. The Trustee's Exhibits 1-14 at Dkt. 94, Exhibit 15 at Dkt. 96 and Debtor's Exhibits 1-7 at Dkt. 95 were admitted at the beginning of the hearing. At the conclusion of the parties' cases in chief the Court took the matter under advisement. After review of the record and consideration of the applicable factors for approval of settlements from *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986), *cert. denied sub nom.*, 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed. 2d 122 (1986), the Court overrules the Objection and will grant the Trustee's Settlement Motion.

This Court has jurisdiction in this chapter 7 case under 28 U.S.C. § 1334(a). Approval of the proposed settlement is a core proceeding under 28 U.S.C. § 157(b)(2).

## BACKGROUND FACTS & PROCEDURAL HISTORY

The Debtor filed a voluntary Chapter 7 petition commencing this case on May 5, 2016. Prior to filing bankruptcy, Debtor represented Vincent Shepard[2] ("Shepard") in an underlying case in Montana's Twentieth Judicial District, Case No. DV-11-304 (referred to herein as the "Shepard Litigation"). Debtor's representation of Shepard in the Shepard Litigation commenced in mid-July 2008 (Dkt. 95-1), and continued through early 2013.[3] Buley first appeared in the Shepard Litigation on January 28, 2013. Ultimately, the Shepard Litigation was resolved short of trial and a confidential settlement was entered by the parties. Debtor and Shepard had entered a fee agreement and following the settlement, funds in the amount of $214,500.00 (the "Contingency Fee") were deposited into the trust account of Julie McGarry, Esq. ("McGarry").[4]

---

[2] According to the pleadings, Mr. Shepard was the plaintiff in his capacity as guardian and parent of minors, and on behalf of the Estate of Stephanie Parker.
[3] The testimony was unclear as to when Debtor withdrew from her representation of Shepard. The Case Register Report at Dkt. 1 does not reflect her withdrawal. However, under no set of circumstances could Debtor have continued to represent Shepard after her license was placed on Disability Inactive Status, May 29, 2013.
[4] Shepard retained McGarry after the settlement was agreed to in October 2013, but before the agreement was finalized in late 2013. Buley was terminated following Shepard's retention of McGarry.

2

Debtor and the Law Firms were incapable pre-petition of agreeing on the division of the Contingency Fee. Shepard has not asserted a claim to the Contingency Fee, and there is no dispute that the Contingency Fee was to be split between Debtor and the Law Firms in some fashion pre-petition.[5] After efforts to reach a negotiated agreement regarding a division of the Contingency Fee in the Shephard lawsuit failed, Buley filed a Complaint for Declaratory Relief on June 10, 2014 in the Montana Twentieth Judicial District Court, Lake County, Cause No. DV-14-136 and styled as Tipp & Buley, P.C. Plaintiffs, vs. Tracey L. Morin, Tracey L. Morin Law Firm, P.L.L.C, and Julie McGarry, Defendants ("Lake County action"). The Lake County action was in its infancy and had not progressed when the Debtor's petition was filed. The funds became an asset of the estate, subject to the Law Firm's claim, on the petition date.

Debtor disclosed the existence of the Disputed Funds and the Lake County action on July 6, 2016, on her Amended Schedules and Statement of Financial Affairs. Once disclosed and following the Trustee's investigation of the probable outcomes, the Trustee's options included (i) litigate the issues associated with division of the funds in the Lake County action; (ii) negotiate a division of the funds; or, (iii) abandon the funds.

With regard to the testimony elicited at the hearing, Buley testified regarding the status of the case when he initially appeared through the settlement conference, and efforts to resolve the dispute over the Contingency Fee to date. Buley explained that prior to his involvement, complaints filed by Debtor on behalf of Shephard had been dismissed with prejudice. Further, shortly after Buley's appearance in the case, Debtor was the subject of a sanctions order. Ex. 9. And, finally, Debtor was directed to circulate any amended complaint to defense counsel, get their comments and make changes as a condition of filing any new amended complaint. Ex. 10.[6]

---

[5] Certainly when Debtor requested Buley's assistance, she did not expect him to work for free.
[6] Buley characterized this order as strange, and while the Court agrees with this characterization, the Court also

Unlike Buley's testimony, Debtor focused her testimony on the work she did prior to Buley's involvement. She explained that (i) her development of the facts was critical to the legal theories that were ultimately pled and not subject to dismissal with prejudice; (ii) that the conditions she worked under were unlike any she had experienced before; and (iii) that her perseverance and work contributed to the ultimate settlement. Further, she testified that the only written fee agreement was between her and Shephard, suggesting that this should tip the scales in her favor, but given the other evidence introduced, this argument was not persuasive.

According to the Settlement Motion, the Contingency Fee would be split as follows: $94,500.00 to the Trustee on behalf of the estate; and, $120,000.00 to the Law Firms.

## DISCUSSION

The bankruptcy court is vested with considerable discretion in approving a bankruptcy estate or trustee's proposed compromises and settlements. *Woodson v. Fireman's Fund Ins. Co.* (*In re Woodson*), 839 F.2d 610, 620 (9th Cir. 1988). However, to approve a compromise, the bankruptcy court must be satisfied that its terms are "fair, reasonable and equitable." *Martin v. Kane* (*In re A & C Properties*), 784 F.2d at 1382. In assessing the reasonableness of a compromise, the Ninth Circuit requires that the bankruptcy court evaluate:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Id*. at 1382. Trustee, as the party seeking approval of the compromise, bears the burden of proving to the bankruptcy court that a proposed compromise is fair and reasonable in light of these four criteria. *Id*. Finally, in assessing a compromise, it is well established that a bankruptcy court need not rule on disputed facts and questions of law, but rather only need canvass the

---

considers this Order indicia of just how badly Shepard's case had gone prior to Buley's involvement.

4

issues. *Burton v. Ulrich* (*In re Schmitt*), 215 B.R. 417, 423 (9th Cir.BAP 1997). Indeed, "[a] mini trial on the merits is not required." *Id*.

    A. Probability of Success in the Litigation.

An attorney retained pursuant to a contingent fee agreement that is discharged, prior to resolution of the underlying claim is entitled to quantum meruit recovery for the reasonable value of services rendered prior to the time of discharge. *Campbell v. Bozeman Investors of Duluth*, 1998 MT 204, 290 Mont. 374, 964 P.2d 41. Here, absent the filing of Debtor's bankruptcy, and an agreement by the parties, the Contingency Fee would be subject to disbursement to Debtor and the Law Firms based on a quantum meruit theory. To prevail, the parties would likely present evidence of the specific hours each worked. Although neither party introduced evidence of hours worked in any detail at the hearing, the evidence presented sufficiently established for the Court, which work was done by which attorneys and the contributions of both to the final outcome.[7]

Debtor's testimony and Trustee's Ex. 1 demonstrate that she spent considerable time working on the underlying case in the time period from mid-July 2008 through early 2013. And, if hours alone were the metric employed under a quantum meruit theory, Debtor would likely succeed in arguing that she is entitled to a greater proportion of the Contingency Fee than the Law Firms. However, review of Trustee's Exs. 2, 3, 4, 5, 6, 7, 8, and 9 support finding that Debtor's efforts, irrespective of the actual hours Debtor spent on the case, were rather futile. Indeed, at the time the Law Firms became involved, the complaints prepared by Debtor had been dismissed with prejudice. Further, the Debtor was subject to a sanctions motion. Based on the

---

[7] Morin introduced Debtor's Ex. 3 at 95-3 and argued that Buley had only worked 12 hours, but Buley's testimony regarding the number of depositions he attended, his attendance at the mediation and otherwise, contradicted it.

evidence presented, the Shepard Litigation was at a dead-end when Buley filed his notice of appearance.

Although it may have been Debtor's command of the facts (as she testified), that Buley relied on when he became involved in the case, it was ultimately Buley who filed the singular complaint that was not dismissed with prejudice. Trustee's Exs. 11-12. Given the "ugliness" that Debtor described in her testimony, and problems she described with the court prior to Buley's involvement, this Court is convinced that, but for Buley, or some other new co-counsel, the Shepard Litigation would not have advanced. Thus, consideration of hours alone results in a skewed or incomplete analysis. To prevail in any case a litigant needs to find the winning combination of facts and law, and while Debtor may have spent significant hours developing the facts, absent a viable complaint and legal theory, those hours would have been for naught.

Given that the Lake County action is pending in the same court (albeit with a different judge) where the Shepard Litigation was pending, this Court has concluded that Debtor's probability of success is low. And, since the Trustee would have to prosecute that litigation, his chances of success are not much greater than Debtor's. Indeed, this Court finds, based on the testimony of Buley and Debtor, along with its review of the case register report, and Trustee's Exs. 1-12, that there is a higher probability that the outcome for the Trustee would be worse in that court, than the outcome that is the subject of the Settlement Motion. The Court finds and concludes that the first *A & C Properties* factor favors approval of the settlement.

B. Difficulty in Collection.

The second *A & C Properties* factor is the difficulties, if any, to be encountered in the matter of collection. That factor is not applicable in this case because the funds to be distributed are available to be disbursed upon entry of any Order directing the manner of disbursement.

6

    C. The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it.

Consideration of the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it, weighs in favor of approval of the settlement. Most importantly, the Trustee has insufficient resources to hire an attorney to represent the estate in the Lake County action. Thus, any attorney retained by the Trustee would likely be on a contingency fee of at least 33%. In a best case scenario, if the estate prevailed entirely and was awarded 100% of the Contingency Fee, its net recovery would be 66% to the estate, approximately $143,500.00. Given this Court's conclusion regarding the probability of success, an award of 100% of the Contingency Fee is not plausible.

If the estate was awarded 75% of the Contingency Fee, it would receive $160,875.00. After deducting a 33% fee for the estate's counsel, the estate would receive approximately $107,000.00. However, there is the issue of the separate fee that the Law Firm claims it is owed. The Court estimates this fee to be $12,750.00.[8] If the Law Firms remained entitled to the separate $12,750.00 fee, the Trustee and estate would obtain the same economic outcome that the Trustee negotiated with the Law Firms, $94,500.00. In order for the expense and delay associated with the litigation to be economically worthwhile to the estate, Debtor would have to establish that the Law Firms were not entitled to more than 25% of the Contingency Fee, and not entitled to the separate fee. Again, the probability of this outcome occurring is low, based on the Court's review of the exhibits, and the testimony of the witnesses. These considerations support approval of the Settlement Motion.

---

[8] Generally, the Court understood Buley's testimony to be that the rationale for the Contingency Fee split with the Trustee was 50/50, and after the funds were split, Buley deducted another fee that he testified he was entitled to, and that related to a claim that was asserted against Hyundai. A 50/50 split of the Contingency Fee would be, $107,250.00/$107,250.00 per party. Under the Settlement Motion, the Trustee would receive $94,500.00 ($107,250.00 less $94,500.00 results in $12,750.00, as the additional fee).

    D.    The paramount interest of the creditors.

No creditors objected to approval of the settlement. The evidence shows that as creditors, their interests are aligned with approval of the settlement. Absent approval of the Settlement Motion, creditors risk an outcome that has no economic, or less economic benefit than the outcome presented in the Settlement Motion. As explained elsewhere in this decision, those risks are great. Therefore, the Court finds that the creditors' paramount interest in receiving payment of their claims can only be realized by approval of the Settlement Agreement. The Court finds and concludes that the fourth *A & C Properties* factor weighs in favor of approval of the settlement.

The first, third and fourth *A & C Properties* factors weigh in favor of approving the Settlement Motion. The second factor is not applicable. Exercising its discretion, this Court concludes that the proposed Settlement between the Trustee and the Law Firms is fair and equitable and satisfies Rule 9019(a).

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of this Chapter 7 bankruptcy under 28 U.S.C. § 1334(a).

2. Approval of the proposed Settlement, in the Settlement Motion is a core proceeding under 28 U.S.C. § 157(b)(2).

3. The Trustee satisfied his burden of proof under F.R.B.P. 9019(a) to show that the terms of the proposed Settlement Agreement with the Law Firms is fair and equitable and in the best interests of creditors and the estate, after consideration of the four factors identified in *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986), *cert. denied sub nom. Martin v. Robinson*, 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed. 2d 122 (1986).

**IT IS ORDERED** a separate Order shall be entered in conformity with the above overruling the Debtor's Objection, and granting the Trustee's Motion for Order Approving Settlement (Dkt. 77).

_____
Honorable Benjamin P. Hursh
U.S. Bankruptcy Judge